# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**CARLY STEWART** and **HAVE JEWELS, INC.**,

    Plaintiffs,

v.                                                                                              2:24-cv-326-JLB-NPM

**UNDERWRITERS AT LLOYD'S, LONDON**,

    Defendant.

## ORDER

    Plaintiffs Carly Stewart and her company, Have Jewels, Inc., were sued in a separate underlying action for allegedly selling a counterfeit necklace for $610,000. Seeking indemnification and a defense of that claim, they initiated this action against their insurer, Underwriters at Lloyd's, London, in a Florida state court. Invoking this court's diversity jurisdiction, Lloyd's brought the action here by promptly noticing its removal.[1] Following jurisdictional discovery and supplemental briefing regarding her domicile (Docs. 23, 26, and 27), Stewart asks that we remand the matter back to state court based on the absence of complete diversity. Because Stewart was domiciled in Costa Rica at the time of removal, we lack diversity jurisdiction and must remand.

---

[1] As the removing party, Lloyd's has the burden of proving that we have subject-matter jurisdiction. *See Scott v. Walmart, Inc.*, 528 F.Supp.3d 1267, 1272 (M.D. Fla. 2021) (citing *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)).

Generally, in suits between citizens of Florida on the one hand and citizens of a foreign state on the other, we have diversity jurisdiction when there is more than $75,000 in controversy.[2] *See* 28 U.S.C. § 1332(a)(2). But citizens of the United States domiciled abroad are neither citizens of a state nor citizens of a foreign state. So actions involving them do not fall within the scope of our diversity jurisdiction. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341 (11th Cir. 2011).

Stewart is a U.S. citizen who claims she abandoned her Florida domicile and established a new one in Costa Rica before this action was even initiated in state court.[3] Resisting this notion, Lloyd's contends that she hasn't done enough to manifest a change in domicile and that she remains a Florida citizen. To demonstrate a change of domicile, one must generally do two things: establish a physical presence at the new location and manifest an intention to remain there indefinitely. *Travaglio v. American Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) (citation omitted).

---

[2] Stewart's company, Have Jewels, is a citizen of Florida. (Doc. 9). And given the financial backing for the insurance policy at issue in this action, Lloyd's is a citizen of the United Kingdom. (Docs. 1 and 7).

[3] In a case removed from state court, diversity jurisdiction rests on the parties' citizenship at the time of removal. *Thermoset Corporation v. Building Materials Corp of America*, 849 F.3d 1313, 1317 (11th Cir. 2017). While the parties argued that the inception of the state-court action was the salient point for this analysis, this timing issue is not germane. The state-court action was initiated in March 2024 (Doc. 1-1), Lloyd's removed it in April 2024 (Doc. 1), and there is no indication in the record of any material change in the probative facts during that narrow span of time. Whether we focused on March or April of 2024, the outcome of the analysis would be the same.

When a party's domicile is in dispute, courts take a totality-of-the-circumstances approach, weighing various factors such as the locations of immediate family and dependents, principal residence, other real and personal property, employment or business operations, voter and vehicle registrations, licenses, bank accounts, tax payments, organizational memberships, and other indicia of permanent residency. *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021). Here, the balance of these factors weighs in favor of finding that Stewart became domiciled in Costa Rica in 2023.

Indeed, during her August 2023 deposition in the underlying matter, she testified that she intended to move to Costa Rica by October 2023. (Doc. 13-2 at 3). Likewise, Stewart and her husband contemporaneously told her husband's parents that they were moving to Costa Rica and intended to make it their permanent residence. (Docs. 27-2, 27-3). And then they did. They sold their home in Florida and bought and moved into one in Costa Rica. (Doc. 26-4 at 12-14, 19). In fact, from October 2023 until now, Stewart has lived there with her husband and two minor children. (Doc. 26-4 at 10). Moreover, since 2023, the Stewarts have worked with lawyers in Costa Rica to obtain permanent-resident status there. (Doc. 27-7). Since the move in October 2023, they have paid property taxes and HOA dues in Costa Rica, and they have not owned any real property or kept any vehicles in Florida. (Doc. 26-4 at 12-13, 23, 36-37, and 56). Nor does Stewart pay taxes or have

organizational memberships here. (Doc. 26-4 at 65 and 68).

Lloyd's counterpoints are unpersuasive. Rather, they appear consistent with the life of a U.S. citizen domiciled abroad. That Stewart remains registered to vote and a licensed driver in Florida is of no moment. As a citizen of the United States, she remains entitled to vote in its elections. *See* 52 U.S.C. § 20310(5)(B). And she is not yet qualified to obtain a driver's license in Costa Rica. (Doc. 26-4 at 28). Maintaining a mailing address in the United States—in this instance, at the home of one's in-laws—likewise fails to raise any doubt about the change in Stewart's domicile. Nor does maintaining bank accounts in both countries, or occasionally returning to Florida for medical appointments or brief visits with family or friends for events like a wedding. Maintaining a personal collection of jewelry in Florida and continuing a business enterprise in Florida may cut against the grain, but Stewart's jewelry sales are limited, sporadic, occur online, and involve customers throughout the country. (Docs. 26-2 at 6; 26-4 at 49, 63-64). To the extent these details could suggest that Stewart has not abandoned her Florida domicile, they are far outweighed by the other circumstances showing that she did. Overall, the objective facts support her claim of a Costa Rica domicile.[4]

---

[4] Lloyd's also points to the allegation in the March 2024 state-court complaint that Stewart "was an adult resident of Collier County, Florida," at "all times pertinent to this Complaint." (Doc. 1-1, ¶ 1). But this is boilerplate language in an unverified complaint. Stewart disclaimed its accuracy during her deposition in this matter, explaining that she and her husband no longer had any real estate interests, let alone a residence, in Florida after October 2023. (Doc. 26-4 at 9, 23-24).

Thus, for lack of diversity jurisdiction, Stewart's motion to remand (Doc. 13) is **GRANTED**. If no Rule 72(a) objections are filed within **14 days** of this order, the clerk is directed to **REMAND** this case by transmitting a certified copy of this order to the clerk of court for the Twentieth Judicial Circuit in and for Collier County, Florida (Case No. 2024-CA-545). Following remand, the clerk shall terminate any pending motions and scheduled events and close the case. If any objections are timely filed, the clerk is directed to withhold disposition until so ordered by the district judge.[5]

---

[5] "Notwithstanding any provision of law to the contrary," the disposition of any issue by a magistrate judge may be reviewed by a district judge. 28 U.S.C. § 636(b)(1); *see also Thomas v. Arn*, 474 U.S. 140, 154 (1985) (magistrate-judge orders are reviewable even when no party objects to them). So, while a remand order by a district judge (or a magistrate judge presiding over a "consent case" under 28 U.S.C. § 636(c)) is generally "not reviewable on appeal or otherwise," 28 U.S.C. § 1447(d), a district judge may review a magistrate judge's remand order. *See Wyatt v. Walt Disney World, Co.*, No. 5:97-CV-116-V, 1999 WL 33117255, *5 (W.D.N.C. July 26, 1999) (holding that § 636(b)(1) trumps § 1447(d)).

Generally, parties who timely object to a magistrate judge's action are entitled to clear-error review. *See* 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72 advisory committee notes (explaining that Rule 72(a) objections correspond to matters referred under § 636(b)(1)(A), and Rule 72(b) objections correspond to matters referred under § 636(b)(1)(B)); *Adkins v. Mid-Am. Growers, Inc.*, 143 F.R.D. 171, 176 (N.D. Ill. 1992) ("The terms 'dispositive' or 'nondispositive' in Rule 72 do not create categories separate from the statute which Rule 72 implements."). There are eight exceptions; and to view the list as merely illustrative is to leave it to the courts to rewrite the statute and create a patchwork of inconsistent regimes throughout the country. *See* 28 U.S.C. § 636(b)(1)(A); *Wachovia Bank, N.A. v. Deutsche Bank Tr. Co. Americas*, 397 F. Supp. 2d 698, 701 (W.D.N.C. 2005) ("[T]he language of § 636(b)(1)(A) is exceedingly clear that a magistrate judge may 'hear and determine any pretrial matter pending before the court, except' a very specific list of eight matters. Congress would be hard-pressed to use language more clearly indicating its intent to create an exhaustive list than 'any…except.'").

A remand motion is not among the eight exceptions. *See Turnmeyer-Cook v. Winnebago Indus., Inc.*, No. 16-CV-3088-LTS, 2016 WL 6080202, *4 (N.D. Iowa Oct. 17, 2016) ("Congress explicitly set out matters that are not within the authority of a magistrate judge … remand is not

**ORDERED** on February 26, 2025

_____
NICHOLAS P. MIZELL
United States Magistrate Judge

---

among them"); *Franklin v. City of Homewood*, No. CIV. A. 07-TMP-006-S, 2007 WL 1804411, *3 (N.D. Ala. June 21, 2007) (same); *Johnson v. Wyeth*, 313 F. Supp. 2d 1272, 1275 (N.D. Ala. 2004) ("The court believes that the magistrate judge in this case was within the authority granted him by § 636(b)(1)(A) to order remand *as long as an opportunity was provided for any party to seek a Rule 72 review of the order.*") (emphasis added); *see generally* Peter J. Gallagher, In Search of A Dispositive Answer on Whether Remand Is Dispositive, 5 Seton Hall Circuit Rev. 303 (2009). Indeed, by only excepting Rule 12(b)(6) motions and not all Rule 12(b) motions, the federal-magistrate-judge statute (28 U.S.C. § 636) provides that magistrate judges may dispose of jurisdictional and venue motions—Rules 12(b)(1) through (3)—by order; and a remand motion likewise concerns forum-selection issues and not the merits of a claim or defense.

It appears that no federal circuit court has taken issue with a magistrate judge's remand order that explicitly protects the parties' rights to request district-judge review, as is done here. And judicial efficiency—the very object of § 636 and the mandate of Civil Rule 1—compels this approach. An order to which there is no objection requires no further work by the district judge, but a recommendation—even in the absence of any objection—does. *Cf. Thomas*, 474 U.S. at 148 (requiring district-judge review of a magistrate judge's finding despite the absence of any objection would be "an inefficient use of judicial resources"). As the court sagely observed in *Johnson*, 313 F. Supp. 2d at 1273: "Why should the district judge be involved at all if no party timely objects to the order of remand?"